EMILIE BECKER, Plaintiff in Error, *vs.* BERTHA B. ORR *et al.* Defendants in Error.

*Opinion filed December 22, 1909.*

DEEDS—*when widow's deed to deceased husband's heirs must be sustained.* A deed made by the widow to the heirs of her deceased second husband, conveying the homestead property and all other real estate of the deceased and all interest in his estate, must be upheld, where it is shown that she was an intelligent and well-educated woman accustomed to business transactions, and that she knew what the deed was, and, after refusing to accept any part of the estate, executed the deed without any fraud, compulsion or misrepresentation being practiced upon her.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

WISE & KEEFE, for plaintiff in error.

L. D. TURNER, L. D. TURNER, JR., and SCHAEFER, FARMER & KRUGER, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, widow of Charles Becker, deceased, filed her bill in the circuit court of St. Clair county against the defendants in error, the administrator and heirs of her deceased husband, praying the court to declare an instrument purporting to be an ante-nuptial contract void on the ground that it was executed after the marriage of the parties, and to set aside a waiver of her right to administer on her husband's estate, and also a deed made by her to his heirs, and to decree to her a widow's award and other statutory rights in the estate. The cause was heard by the chancellor on the bill, answer, replication and the evidence of the respective parties produced in open court. The chancellor dismissed the bill, and the writ of error in this case was sued out to bring the record here for review.

The material facts are as follows: The complainant, then Emilie Espenhain, of Milwaukee, Wisconsin, a widow with five children, all of whom were married, contracted a second marriage with Charles Becker, a widower, of Belleville, in this State, who had four grown-up children. The marriage took place on June 10, 1907, and thereafter the parties occupied the residence and homestead of Charles Becker in Belleville. A week or two after the marriage the complainant and her husband executed a contract dated June 5, 1907, five days before the marriage, reciting that they intended to enter the bonds of matrimony and were each possessed of property and had children of former marriages, and the complainant signed the contract with the name Emilie Espenhain, which was her name before the marriage. By that contract Charles Becker renounced all right to the property, real and personal, of the complainant, and agreed that if she survived him she should have the sole use and control of the residence or homestead occupied by them, together with the furniture and fixtures therein, for her natural life, and she renounced forever all right, title and interest in the property, real and personal, of Charles Becker to which she, as his wife, would be entitled, reserving only the life estate in the residence or homestead and the furniture and fixtures therein contained. This contract was executed in accordance with and in pursuance of a verbal agreement made before the marriage, the terms of which were embodied in the written instrument. On Thursday, January 2, 1908, Charles Becker died by his own hand and his funeral took place on the following Saturday. On the next Monday after the funeral the complainant signed a waiver of her right to administer on the estate and executed a deed to the heirs-at-law of the homestead property and all other real estate of her deceased husband and all interest in his estate. At the time of the marriage complainant had property to the amount of $130,000, and the estate of Charles Becker was inven-

toried after his death at about $400,000, against which claims were allowed to the amount of $40,000 or $50,000. After the death of Charles Becker his heirs offered to give the complainant the residence outright, but she said that she did not want it and did not want anything except what she brought there and desired to go back to Milwaukee as soon as possible. She had made repeated declarations after the marriage that there was an agreement by which her property, if she died first, was to go to her children, and if her husband died first his property was to go to his children. She was an intelligent and well-educated woman, accustomed to business transactions, and she understood the nature and import of the deed. It was not read to her, but when the officer took the acknowledgment he asked her if she understood the deed, and she said she did. She had helped her first husband to manage a dry goods business in St. Louis and was one of the executors of his estate, which was of the value of $400,000, but she did not take any active part in the settlement of the estate beyond signing the necessary papers.

It is contended that the written contract between the complainant and her husband, which was dated prior to the marriage and recited an intention to enter into that relation, was void because it was reduced to writing and signed after the marriage had taken place and was without consideration; that the deed was void for the reason that the complainant was suffering under great mental distress at the time it was executed on account of the fact and the manner of her husband's death, and that the waiver of the right to administer was void because she was in ignorance of her right to administer and that she would receive commissions for so doing, and was not advised of the fact. The verbal contract was made before the marriage, and when reduced to writing afterward it bore date before the marriage and was signed by complainant with her name, Emilie Espenhain. But it is not worth while to consider

questions raised concerning that contract, since the deed was effective to accomplish the same object and there was no sufficient evidence to impeach it. The complainant had full capacity to contract and there was no confidential relations between her and her grantees. She could read and write in both English and German, and if she did not read the deed she could have done so. She understood what the deed was, and there was no fraud, compulsion or misrepresentation of any kind. The chancellor was right in holding the deed to be a valid transfer of all her interest in the estate. So far as the waiver of the right to administer is concerned, the evidence shows that she did not intend to remain in this State and soon after signing it she went to Wisconsin, and having become a non-resident was disqualified to act as administratrix.

The decree is affirmed.

*Decree affirmed.*